291 So.2d 767 (1974)
STATE of Louisiana
v.
Pete STEPHENSON, Jr.
No. 53988.
Supreme Court of Louisiana.
February 18, 1974.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
Robert F. Fleming, Jr., Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
DIXON, Justice.
Defendant was tried under a bill of information charging him with attempted murder. He was convicted after a trial by jury and was sentenced to serve eight years at hard labor. Defendant appeals, relying on four perfected bills of exceptions.
*768 Bill of Exceptions No. 1
This bill was reserved when the trial court overruled an objection to the jury venire panel, there being only thirty-six available jurors out of fifty-six on the petit jury venire list. The trial judge had excused twelve members of the venire who had served on a jury three days before the instant case was tried.
Defendant contends that such prior service is not a sufficient reason to excuse members of a venire, and that the action infringed upon his right to trial by jury.
C.Cr.P. 418 provides in pertinent part:
"The jury commission shall draw indiscriminately and by lot as many name slips from the general venire box as a court, may direct, not less than seventy-five, for service as petit jurors during the next monthly session of that judge's section of court."
C.Cr.P. 783 provides:
"The court may excuse a member of the petit jury venire at any time prior to the time he is sworn as a juror to try a particular case. The panel shall be selected from the remaining members of the petit jury venire. The court, either on its own motion, or that of the state or a defendant, may order the attachment of an absent and unexcused petit jury venireman."
Official Revision Comment (b) to this article states:
"This article, as well as the source articles, contains a near contradiction. That is, there is some conflict between the defendant's right to have at hand the entire venire, and the court's authority to excuse a large part of the venire in advance. However, the right of the judge to excuse in advance is essential, since many persons chosen for the venire have valid reasons for being excused. The discretion of the judge must be relied upon to avoid abuse, and abuse is reversible error. In State v. Jugger, 217 La. 687, 47 So.2d 46 (1950), the supreme court held that, there being no fraud or collusion, the excusing of over half of the venire (32 out of 50) was not in itself an abuse of discretion."
Defendant fails to show that any special class was systematically excluded, or that he was deprived of a trial before an unbiased jury because of the defect alleged. The defendant was not compelled to accept an obnoxious juror as a result of the ruling. Cf. State v. Jugger, supra. The accused has no right to a trial by any particular jury or juror, but only to a trial by a competent, impartial jury. State v. Preece, 270 So.2d 850 (La.1973); State v. Boutte, 255 La. 605, 232 So.2d 288 (1970).
There is no showing that the trial judge abused his discretion.
This bill is without merit.
Bill of Exceptions No. 2
This bill was reserved during voir dire examination of the jurors. After the State had completed its examination of four veniremen it tendered them to the defendant so that he could conduct his examination of them. The defendant then moved to have the State either accept or challenge the jurors before the defense examined them. The motion was denied and this bill was taken.
C.Cr.P. 786 provides:
"The court, the state, and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court. A prospective juror, before being examined, shall be sworn to answer truthfully questions asked him relative to his qualifications to serve as a juror in the case."
C.Cr.P. 788 provides:
"After the examination provided by Article 786, a prospective juror shall be tendered first to the state, which shall accept or challenge him. If the state accepts *769 the prospective juror, he shall be tendered to the defendant, who shall accept or challenge him. When a prospective juror is accepted by the state and the defendant, he shall be sworn immediately as a juror. This article is subject to the provisions of Articles 795 and 796."
These provisions clearly contemplate that there shall be one voir dire examination of a juror participated in by the enumerated parties, and that upon completion of that examination the State is required to accept or challenge first. Cf. State v. Sheppard, 263 La. 379, 268 So.2d 590 (1972). The State is not required to accept or challenge until the completion of the voir dire examination, and such an examination is not completed until the court, the district attorney and defense counsel have completed asking their questions.
Bill of Exceptions No. 2 is without merit.
Bill of Exceptions No. 3
This bill pertains to the denial of a motion for a mistrial. The motion was grounded on the fact that defense counsel had been forced to object to hearsay evidence on several occasions. In each instance defendant's objection was sustained, and the witness admonished. It does not appear that any substantive evidence came in via hearsay.
Although repeated deliberate attempts to elicit hearsay testimony by the prosecution may provide grounds for a mistrial under C.Cr.P. 775, such a situation is not before us now. The trial court sustained the objection of the defendant in each instance complained of. He has no grounds for further complaint.
This bill is without merit.
Bill of Exceptions No. 4
This bill was reserved to the denial of a motion for a new trial grounded on the verdict being contrary to the law and the evidence and prior bills of exceptions.
We have reviewed the prior bills reserved and found them to be without merit. The trial judge stated in his per curiam that the verdict was justified by the law and the evidence. State v. Daspit, 167 La. 53, 118 So. 690 (1928). As such, this allegation presents nothing for our review. State v. Crockett, 262 La. 197, 263 So.2d 6 (1972).
For the reasons assigned, the conviction and sentence are affirmed.
SUMMERS, J., concurs in result and assigns reasons.
SUMMERS, Justice (concurring).
The reference in the Court's opinion to the case of State v. Daspit, 167 La. 53, 118 So. 690 (1928), is an effort to approve the doctrine that a judge can determine, according to his own judgment, whether the verdict of the jury was justified by the evidence.
This effort of the Court is contrary to the explicit provisions of Article XIX, Section 9, of the Constitution providing:
"The jury in all criminal cases shall be the judges of the law and of the facts on the question of guilt or innocence, having been charged as to the law applicable to the case by the presiding judge."
See also dissents or concurrences in State v. Jones, 288 So.2d 48 (La.1974); State v. Pellerin, 286 So.2d 639 (La.1973); State v. Gilbert, 286 So.2d 345 (La.1973); State v. Ferdinand, 285 So.2d 530 (La.1973); State v. Triplett, 285 So.2d 532 (La.1973); State v. Tharp, 284 So.2d 536 (La.1973); State v. Lee, 281 So.2d 123 (La.1973); State v. Douglas, 278 So.2d 485 (La.1973); State v. Dimopoullas, 260 La. 874, 257 So.2d 644 (1972); State v. Andry, 260 La. 79, 255 So.2d 81 (1971). The principle embodied in our constitution was brought about in England by the eloquence of Lord Erskine *770 and other eminent jurists. Concisely stated, my theory of the constitutional mandate is that where a criminal case is tried by a jury, since it is the sole judge of the law and the facts, or before the judge alone where a jury may be waived, an acquittal is final, however reached or why, even if corruptly reached; and likewise a conviction, even if unjust, is final, without remedy of appeal on the question of guilt or innocence. Only the rulings of the judge on questions of law is subject to reversal by the Court on appeal for error committed to the prejudice of the convicted felon. The State has no right of appeal upon acquittal to correct errors occurring in the course of the trial.
Thus the trial judge has no authority to direct a verdict of not guilty. Nor can he pass on the sufficiency of the evidence which might serve the same purpose. To do so is to trespass upon the exclusive prerogative of the jury. The concept is not novel in Louisiana. Luery v. State, 116 Md. 284, 81 A. 681 (1911); Goldman v. State, 75 Md. 621, 23 A. 1097 (1892); Foxwell v. State, 146 Md. 90, 125 A. 893 (1924); Jessup v. State, 117 Md. 119, 83 A. 140 (1912); Smith v. State, 169 Md. 474, 182 A. 287 (1936).
Although granting of new trials to correct what may be considered an unjust and unwarranted verdict may be acceptable to the common law system, to permit such a review by the trial judge on the question of guilt or innocence unquestionably dilutes the authority of Article XIX, Section 9, of the Constitution.
The principles which underlie the spirit of Article XIX, Section 9, have been often stated and are assembled in 92 Md.L.Rev. 34, 49, 50 (1943). John Milton, who in his Defense of the People of England, after speaking of the King's power in his Courts and through his judges, adds:
"Nay, all the ordinary power is rather the people's, who determine all controversies themselves by juries of twelve men. And hence it is that when a malefactor is asked at his arraignment, `How will you be tried?' he answers always according to the law and custom, `By God and my country'; not `by God and the King, or the King's Deputy';"
and Alexander Hamilton who, in Croswell's Case in New York in 1803, advances three propositions on this subject:
"That in the general distribution of powers in our system of jurisprudence, the cognizance of law belongs to the Court, of fact to the Jury; that court is absolute, and exclusive . . . That in criminal cases, the law and fact being always blended, the Jury, for reasons of a political and peculiar nature, for the security of life and liberty, is intrusted with the power of deciding both law and fact . . .
"That this distinction results: 1. From the ancient forms of pleading in civil cases, none but special pleas being allowed in matters of law; in criminal, none but the general issue; 2. From the liability of the jury to attaint in civil cases, and the general power of the Court as its substitute in granting new trials, and from the exemption of the jury from attaint in criminal cases, and the defect of power to control their verdict by new trials, the test of every legal power being its capacity to produce a definite effect, liable neither to punishment nor control . . ..
"That in criminal cases, nevertheless, the Court are the constitutional advisers of the jury in matter of law; who may compromit their consciences by lightly or rashly disregarding that advice, but may still more compromit their consciences by following it, if exercising their judgments with discretion and honesty they have a clear conviction that the charge of the Court is wrong."
and, Dillon's Law and Jurisprudence (1895), at page 125:
"I find: `In criminal cases there is no substitute for the Jury that would be acceptable to the profession or endured by the people. In the solemn act of passing *771 upon the guilt of those charged with offenses against the public, the Jury represent the Majesty of the people as a whole; and when acting under the guidance of a capable Judge, their verdicts are almost always right. In the occasional cases where the offender has been almost more sinned against than sinning, but which cannot be anticipated or excepted from the criminal code, and where the offender is consequently technically guilty and a judge would feel bound so to decide, the Jury administer an irregular equity, not capable of being defined and formulated, nor of a nature to be expressly sanctioned by the lawgiver, but which satisfies the judgment and conscience of the community, without overturning the criminal statute, which still stands intact."
On this note I rest for a while in this effort to adhere to what I consider to be the letter and spirit of our constitution. Fortunately no harm is done in this decision. The Court's expressions on the subject are mere dicta.
I concur in the result only.